IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SUZETTE M. HENSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 10-707-GPM-CJP |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## REPORT and RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to District Judge G. Patrick Murphy pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Suzette M. Henson seeks judicial review of the final agency decision finding that she is not disabled and denying her Disability Insurance Benefits (DIB) pursuant to **42 U.S.C. § 423**.

## Procedural History

After a prior application had been denied, plaintiff filed an application for DIB in June, 2007, alleging disability beginning on April 3, 2004. This was the same onset date as she had alleged in her prior application. The prior application was denied on May 4, 2007, and Ms. Henson did not appeal. Therefore, the period at issue begins on May 5, 2007.

After the present application was denied initially and on reconsideration, a hearing was held before Administrative Law Judge (ALJ) Phylis M. Pierce. ALJ Pierce denied the application for benefits in a decision dated January 6, 2010. (Tr. 23-33). Plaintiff's request for review was denied by the Appeals Council, and the January 6, 2010, decision became the final agency decision. (Tr. 1-6).

Plaintiff has exhausted her administrative remedies and has filed a timely complaint in this Court.

## Issues Raised by Plaintiff

In her brief, **Doc. 22**, Ms. Henson raises the following issues:

(1)  The ALJ erred in her consideration of the opinions of plaintiff's treating doctor and in her reliance on the opinions of a state agency reviewing doctor.

(2)  The determination of plaintiff's credibility was flawed.

## The Evidentiary Record

This Court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record.

**1.   Plaintiff's Testimony**

Plaintiff was represented by counsel at the hearing. (Tr. 56).

Ms. Henson was born in 1972 and was 37 years old at the time of the hearing. She graduated from high school. (Tr. 58). She lived with her husband and 9 year old daughter. (Tr. 59). She had previous employment as a stocker in a store, cashier, and assistant manager of a retail store. (Tr. 58). She was unable to work because of pain in her low back and legs. She could no longer do the lifting and standing that her job required. She also had anxiety and depression. (Tr. 59-60).

Plaintiff was not receiving treatment from a mental health specialist. Her treating physician, Dr. Rayes-Prince, prescribed the generic form of Xanax for anxiety, Cymbalta for depression, and Ambien to help her sleep. (Tr. 60). She was also taking Kadian, Percocet and

Zanaflex.[1]  She had been taking those pain medications for 4 years.  The medications decrease her pain.  (Tr. 61).

Ms. Henson testified that the medications take some of her pain away, but not all of it.  She has side effects of drowsiness and difficulty concentrating.  (Tr. 66).  She used a TENS unit for a while, but it did not help.  (Tr. 66).

Plaintiff also takes medication for migraine headaches.  Her migraines last about 3 hours.  (Tr. 67-68).

On a typical day, she does "whatever [she] can do."  (Tr. 61).  She tries to do a few things around the house, like dishes or light housework, but she has to lay down to ease the pain.  She does some laundry.  She only cooks if it is something very easy.  Her husband helps with housework.  She only drives when she has to, about 3 times a week.  Her husband usually does the grocery shopping.  She does not go to her daughter's school functions or to church.  She has no hobbies.  (Tr. 61-64).

Ms. Henson estimated that she can sit for 15 minutes, and then must move around because of back pain.  She can stand for 15 minutes, and can walk for 10 to 15 minutes.  She can lift maybe 5 pounds.  (Tr. 64).

Dr. Rayes-Prince told her she was deconditioned, and that she should walk.  She has tried, but she cannot walk for more than 15 minutes.  She has not had physical therapy.  (Tr. 65).

Ms. Henson testified that her condition has worsened since the hearing on her prior application in that she developed pain in her middle back, her neck and her right shoulder.  She has spurs in her neck.  An MRI showed scar tissue and additional disc bulges.  (Tr. 68).

---

[1] Zanaflex is a muscle relaxer.  www.drugs.com/zanaflex.html, accessed on June 10, 2011.  Kadian is an extended-release form of morphine sulfate.  www.drugs.com/kadian.html, accessed on June 10, 2011.

She has gained 65 pounds due to inactivity. (Tr. 69-70).

Dr. Rayes-Prince has told her there is "no prospect of improvement whatsoever." (Tr. 71).

**2.    Vocational Expert**

Dr. Lowell Latto testified as a vocational expert. (Tr. 72).

Dr. Latto agreed with the findings on the prior application with respect to the exertional levels of Ms. Henson's past work, i.e., that her work as a stocker and an assistant manager was medium, and her work as a cashier was light. (Tr. 73; 58-59). The ALJ found that Ms. Henson was unable to do her past work. (Tr. 73).

The VE was asked to assume a person with plaintiff's educational and work history who could do light work, but was limited as found by the state agency examining physician. (Tr. 73). The state agency physician concluded that she could frequently lift 10 pounds, occasionally lift 20 pounds, stand/walk for 6 out of 8 hours, sit for 6 out of 8 hours, unlimited push/pull, but only occasional postural activities and should avoid exposure to machinery and heights. (Tr. 351-358). The VE was also asked to assume that she was limited to simple, unskilled, repetitive low stress jobs. He testified that such a person could do jobs such as laundry worker (600 jobs in regional economy and over 37,000 in national economy) and housekeeper at the light level (5,200 jobs in regional economy and over 435,000 in national economy). (Tr. 74).

The ALJ then asked the VE to assume that she was limited to the sedentary exertion level with the same nonexertional limitations. He testified that, with such limitations, she could do jobs such as telephone quotation clerk and telemarketer, which exist in significant numbers in the regional and national economy. (Tr. 74).

**3.    Medical Records Prior to May 5, 2007**

Ms. Henson's prior application for benefits was denied on May 4, 2007. (Tr. 84). Ms.

Henson did not appeal that decision.  In her decision on the present application, the ALJ found that there was no basis on which to reopen the prior denial.  (Tr. 23).  Therefore, the decision on the prior application is final and means that Ms. Henson was determined to be not disabled as of May 4, 2007.  See, ***Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)**.

Ms. Henson was seen by Dr. Scott Standard, a neurosurgeon, on November 16, 2005.  She gave a history of having hurt her back at work in April, 2004.  She then had physical therapy and microdiscectomy surgery at L5-S1.  She was continuing to have pain in her lower back and into both her legs.  (Tr. 224-224).  Dr. Standard reviewed an MRI film taken after that surgery, which showed degenerative disc disease at 2 levels.  He diagnosed symptomatic degenerative disc disease.  He felt there were no surgical options available, and recommended that she try Neurontin.  (Tr. 222).

The 2004 surgery had been done by Dr. Theodore Davies.  (Tr. 398).  Plaintiff returned to Dr. Davies in June, 2006, complaining of chronic pain, pain in her right leg, and neck pain.  (Tr. 285).  In July, 2006, Dr. Davies reviewed an MRI which showed degenerative changes at L4-L5, which was "not yet a surgical problem."  She also had some scar tissue at L5-S1 which was not affecting the nerve root.  (Tr. 283).  In March, 2007, another MRI showed no new disc displacement or significant stenosis/spurring.  (Tr. 280).

Ms. Henson's family doctor, Dr. Staton, referred her to a pain specialist, Dr. Emily Rayes-Prince.  She was first seen by Dr. Rayes-Prince on February 27, 2006.  (Tr. 313-315).  Dr. Rayes-Prince prescribed various medications.  In August, 2006, she was noted to be stable on her medications.  (Tr. 304).  She was taking Zanaflex, Percocet, Restoril, Lodine and Celexa.  In December, 2006, this doctor noted that nerve conduction studies indicated chronic S1 radiculopathy on the right.  (Tr. 321).  In April, 2007, plaintiff described her pain as continuous, but better with medication.  She paced rest and activity.  She was able to do some light

housekeeping. Her pain was worse with prolonged sitting, standing, walking and driving. (Tr. 298).

**4.**     **Medical Records After May 4, 2007**

Ms. Henson continued to be treated by Dr. Rayes-Prince., who treated her with various medications for pain and depression. (Tr. 293-324).

An MRI on July 10, 2007, showed degenerative changes in the discs and end plates at L4-L5 and L5-S1,with postoperative scar tissue around the right S1 nerve root. She had central disc bulging at L4-L5 and L5-S1. She also had central disc protrusion at L3-L4. (Tr. 287-288).

On May 12, 2008, a myelogram and CT scan showed diffuse bulging with central herniation of the disc at L3-L4 and bilateral foraminal encroachment. At L4-L5, there was diffuse bulging of the disc with ventral flattening of the thecal sac. She had soft tissue density at L5-S1 with some displacement of the right S1 nerve root. This was thought to be scar tissue from prior surgery. (Tr. 388- 389).

Ms. Henson was seen by Dr. Davies on May 21, 2008. (Tr. 393). She was 66 inches tall and weighed 211 pounds. He noted that the recent myelogram showed central displacement or bulging discs at L3-L4 and L5-S1. On exam, she had a "strange gait." She appeared to have weakness on dorsiflexion, but, on testing, she had good strength. He noted that she "has straight leg raising without significant pain sitting." He recommended that she get a high-resolution MRI and return after that test. (Tr. 393). There is no indication in the record that the recommended testing was done or that Ms. Henson returned to Dr. Davies.

On May 31, 2008, Ms. Henson told Dr. Rayes-Prince that she had constant, sharp and penetrating pain. However, she had been slightly more active, doing light housework with frequent rest. She got 40 per cent pain relief with Oxycontin. They discussed a trial of lumbar epidural steroid injections, but it was unclear whether she had insurance coverage for that

procedure. (Tr. 380). At the next visit, on June 27, 2008, there was no mention of injections. She complained of pain radiating into both legs. Her prescriptions for Oxycontin, Percocet, Cymbalta, Zanaflex and Lodine were refilled. (Tr. 379). On August 21, 2008, she reported to Dr. Rayes-Prince that she had 70 per cent relief with medications. She had not responded to a TENS unit. The doctor noted that a goal was to reduce Percocet over time. (Tr. 377). On October 16, 2008, she reported that she had been somewhat more active and was walking more. Her cousin had passed away in Florida and she was planning to attend the funeral there. Her pain was controlled with Oxycontin, but she had some side effects and wanted to use Percocet. (Tr. 376). On December 12, 2008, Dr. Rayes-Prince recommended that she have lumbar steroid injections, but Mr. Henson did not want them. (Tr. 374). On March 6, 2009, Ms. Henson complained of headaches. Dr. Rayes-Prince told her to monitor her blood pressure at home due to the headaches. She again noted that Ms. Henson did not want steroid injections. She was getting good relief with Kadian and Percocet. Lyrica was helping with her leg pain, and Cymbalta was helping her depression. (Tr. 372). On May 9, 2009, she said she was walking when the weather allowed. (Tr. 371). On July 2, 2009, Dr. Rayes-Prince again noted that she did not want injections. She reported that she got "good relief" with her medications, but complained of insomnia. (Tr. 370).

**5.** **Consultative Physical Exam**

Dr. Adrian Feinerman performed a consultative physical exam on December 17, 2007. (Tr. 332-336). Ms. Henson complained of back pain radiating into her right leg. She also complained of pain in her neck and right shoulder. She said she had headaches once a month.

She was 66 inches tall and weighed 203 pounds. On examination, she had no anatomic abnormality of her cervical, thoracic or lumbar spine. She could forward flex the lumbar spine to 45 degrees. She had no pain in her weight bearing joints. She walked normally. She was able to

walk 50 feet and to get on and off the table without help. She was able to tandem walk, walk on heels and toes, hop, squat and rise from a chair without difficulty. Sensory examination was intact. Muscle strength was full. She had no spasm or atrophy. Fine and gross manipulation were intact. Straight leg raising was positive on the right.

Dr. Feinerman concluded that Ms. Henson was able to sit, stand, walk, hear and speak normally. She was able to lift, carry and handle objects without difficulty. (Tr. 335).

**6.     RFC Evaluations**

On January 7, 2008, state agency physician Bharati Jhaveri, M.D., evaluated plaintiff's RFC, and concluded that she could do light exertional activities, i.e., she could frequently lift 10 pounds, occasionally lift 20 pounds, stand or walk for 6 out of 8 hours, sit with normal breaks for 6 out of 8 hours, and had no push/pull limitations. In making this assessment, the doctor cited the following factors: chronic low back pain with degenerative changes and radiculopathy; prior discectomy surgery; pain, weakness and numbness down right leg; forward flexion to 45 degrees; positive straight leg raising on the right; BMI of 32.8. (Tr. 352). The doctor limited her to only occasional postural activities such as climbing and stooping, etc., based on her pain, prior surgery and limitation of movement. (Tr. 353). No manipulative or environmental limitations were assessed, except that she should avoid exposure to hazards such as machinery and heights. (Tr. 354- 355). Dr. Jhaveri described the records relied upon, which included records from Drs. Davies, Staton, and Rayes-Prince, as well as the results of the MRI testing from June, 2006, and July, 2007. (Tr. 358).

Dr. Rayes-Prince completed a form Medical Assessment of Ability to Do Work-Related Activities on August 27, 2009. (Tr. 405-415). This is the medical opinion which plaintiff argues should have been accepted by the ALJ. Dr. Rayes-Prince stated that plaintiff could lift 10 pounds occasionally and no weight frequently. She could walk for 15 minutes at a time, for a total of 2

hours a day. She could stand for 10 minutes at a time, for a total of 1 hour a day. She could sit for 20 minutes without interruption, for a total of 4 hours a day. Dr. Rayes-Prince cites as support her office notes from February 27, 2006, which was the initial visit and predates the period at issue. (Tr. 313-315). She was limited in postural activities and limited in use of legs for foot controls. She could reach overhead only when seated. Dr. Rayes-Prince noted that she was further limited by chronic medication needs, frequent absences, need to recline and take breaks. She then hand-wrote on the form, "She is deconditioned due to her LBP [low back pain] & radiculopathy. This deconditioning also affects her functional ability." (Tr. 408).

**7.    Mental Assessment**

Harry J. Deppe, Ph.D., performed a consultative psychological examination on December 17, 2007. (Tr. 326- 329). The examination was generally unremarkable. Ms. Henson was oriented, and responded to questions in a coherent and relevant fashion. Her fund of general knowledge was good. Her memory for recent and remote events was good. Her memory for immediate events was fair. She was able to perform simple calculations. Dr. Deppe concluded that she had intact abilities to relate to others, to understand and follow simple instructions, and to maintain attention required to perform simple, repetitive tasks. He felt she had fair ability to withstand the stresses of day-to-day work activity.

A Psychiatric Review Technique form was completed by Donald Henson, Ph.D., on January 16, 2008. (Tr. 337-346). Dr. Henson concluded that plaintiff did not have a severe mental impairment.

## Applicable Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See,** *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992);** *Pope v. Shalala*, **998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing. **See,** *Bowen v. Yuckert*, **482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** *Knight v. Chater*, **55 F.3d 309, 313 (7th Cir. 1995).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Ms. Henson is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See,** *Books v. Chater*, **91 F.3d**

**972, 977-78 (7th Cir. 1996)** (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richard v. Perales*, **402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, **103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, **597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### Analysis

Here, the ALJ properly followed the five step analysis. She concluded that plaintiff has degenerative disc disease of the lumbar spine, status post microdiscectomy, and that this is a severe impairment. (Tr. 26). With regard to mental impairments, the ALJ found that plaintiff's depressive symptoms do not cause more than mild limitations in her ability to do mental work activities. Accordingly, she found that plaintiff's mental impairments are not severe. (Tr. 26).

The ALJ concluded that plaintiff has the RFC to perform light work, but limited to only occasional postural activities and no hazards such as machinery and heights. She is also limited to simple, unskilled, repetitive, low stress jobs. (Tr. 26). This is consistent with the RFC findings of the state agency reviewer, with the additional limitation to low stress work.

In accordance with the testimony of the vocational expert, the ALJ found that Ms. Henson is not able to perform her past work, but there are other jobs in significant numbers at both the light and sedentary level which she could perform. (Tr. 32-33).

Plaintiff's first point is that the ALJ erred in not giving greater weight to the opinions of

her treating doctor, Dr. Rayes-Prince.

A treating physician's opinion is, of course, not automatically entitled to controlling weight. Such an opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. ***Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000);** ***Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).**

With regard to the assessment of treating source opinions, **20 C.F.R. §404.1527(d)(2)** states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u>

[emphasis added]

"An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." ***Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)**.

Here, the ALJ rejected Dr. Rayes-Prince's opinions as to plaintiff's RFC because her opinion was not supported by objective medical findings and was inconsistent with the information in her own treatment records. See, Tr. 30. As the ALJ pointed out, Dr. Rayes-Prince's treatment notes indicated that Ms. Henson was functioning at a higher level than set forth in her assessment of August 27, 2009. Notably, in her assessment, Dr. Rayes-Prince cites as support her office notes from February 27, 2006, which was the initial visit and predates the period at issue. (Tr. 313-315). The assessment seems to ignore the fact that Dr. Rayes-Prince's office notes document that Ms. Henson was getting increasing pain relief from her medications as

-12-

time went on, and was increasing her activity level.

Further, there is a lack of objective information in Dr. Rayes-Prince's treatment notes. The notes consist mostly of a recitation of plaintiff's subjective statements. The only clinical or laboratory diagnostic techniques referred to are the EMG, MRI and myelogram studies. However, while Dr. Rayes-Prince records the results of such testing in her notes, the notes do not relate those test results to functional limitations.

Plaintiff argues that the ALJ ignored the evidence of positive findings. This is incorrect. First, some of the positive findings on which plaintiff relies, such as the EMG testing, occurred before the relevant date of May 5, 2007. Plaintiff is correct in her argument that she had positive findings on a myelogram and CT scan in May, 2008, which the ALJ noted. See, Tr. 27. However, none of her treating doctors indicated that these findings translated into a greater degree of functional limitation. As the ALJ noted, Dr. Davies saw her after that test, but did not indicate that she had much change in her condition or that she was in need of aggressive treatment such as surgery. (Tr. 27, 393). And, as the ALJ also noted, Dr. Rayes-Prince's records document that Ms. Henson achieved increasing pain relief with medication in the months following the myelogram. (Tr. 27).

In short, "the opinion of a treating physician is entitled to controlling weight only if supported by objective medical evidence." **Denton v. Astrue, 596 F.3d 419, 424 (7th Cir. 2010)**. Here, the very limited functional assessment offered by Dr. Rayes-Prince in her report of August 27, 2009, was not supported by objective evidence and, in fact, was contradicted by that doctor's treatment records. The ALJ did not err in failing to give Dr. Rayes-Prince's opinion controlling or significant weight.

In addition, to the extent that plaintiff argues that the ALJ was bound to accept her treating physician's opinion as to her RFC, she is mistaken. SSR96-8p instructs that the "RFC assessment

must be based on *all* of the relevant evidence in the case record," including medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, medical source statements, etc. SSR96-8p, at *5 (emphasis in original). Opinions of treating doctors regarding RFC are *not* given any special weight because the issue of RFC is an issue that is reserved to the Commissioner. See, 20 C.F.R. §416.927(e). SSR 96-59 explains:

> However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

SSR 96-5p, at *2.

Plaintiff also argues that the opinions of the state agency physician did not constitute substantial evidence because the state agency physician did not have all of the medical evidence at the time he assessed Ms. Henson's RFC. At pages 11 and 12 of her brief, plaintiff sets out a list of medical records which Dr. Jhaveri apparently did not review. This circumstance does not so undermine his opinion as to make it unworthy of any weight. First, four of the items predating the period in issue are of little, if any, relevance. Ms. Henson did not appeal from the denial of her prior application. Thus, she is deemed to have been not disabled as of May 4, 2007, the date of the prior denial. The issue here is whether she has gotten worse since that date. Likewise, the hospital records regarding pneumonia, a CT scan showing sinusitis, and a broken thumb are irrelevant.. It is true that Dr. Jhaveri's assessment predated the May, 2008, myelogram and CT scan, but, as was discussed above, none of the medical records suggest that the findings on these tests resulted in any greater degree of limitation, and, in fact, Dr. Rayes-Prince's treatment notes reflect that Ms. Henson's condition improved in the period following these tests.

In this regard, plaintiff argues that the ALJ played doctor by determining on her own the

significance of the May, 2008, myelogram and CT. On the contrary, plaintiff's argument invites the Court to play doctor by deciding the significance of the May, 2008, test results. The records of the doctors who treated Ms. Henson did not indicate that the degenerative changes reflected on those tests resulted in any change in her condition or functional level. The ALJ did not substitute her own judgment for the judgment of the doctors.

Plaintiff also suggests that the ALJ could not afford significant weight to Dr. Jhaveri's opinion because his qualifications do not appear in the record. This argument ignores the recognized role of the state agency physician. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." **Social Security Ruling 96-6p, at 2.** The ALJ is required by **20 CFR §§ 404.1527(f) and 416.927(f)** to consider the state agency physicians' findings of fact about the nature and severity of the claimant's impairment as opinions of non-examining physicians; while the ALJ is not bound by the opinion, she may not ignore it either, but must consider it and explain the weight given to the opinion in her decision. *Id.* ALJ Pierce did so here.

The ALJ's assessment of plaintiff's RFC was supported by substantial evidence, i.e., the assessment of the state agency physician, the reports of the consultative examiners, and the treatment records of plaintiff's doctors. There was medical evidence in the record to the contrary, but it fell to the ALJ to resolve any conflicts in the evidence. ***Diaz v. Chater*, 55 F.3d 300, 306, n.2 (7th Cir. 1995).** The ALJ put forth a sufficient analysis of the evidence, and she set out a logical explanation of her conclusions about how plaintiff's symptoms limit her ability to work. This is legally sufficient. ***Kasarsky v. Barnhart*, 335 F. 3d 539, 543 (7th Cir. 2003)**.

Plaintiff also takes issue with the ALJ's credibility findings, but much of her argument here is a rehash of the points she has already made.

The ALJ found that Ms. Henson's testimony about the level of her pain and the extent of her functional abilities to be not credible. In large part, this assessment was based on conflicts between her testimony and other evidence in the record. For instance, Dr. Rayes-Prince's records documented that plaintiff achieved good control of her pain with medications, and reported very little side effects. She did not need aggressive treatment such as surgery. Further, she declined to have steroid injections, which Dr. Rayes-Prince recommended. All of these were proper considerations. See, *Castile v. Astrue*, **617 F.3d 923, 929-930 (7th Cir. 2010).**

The credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, **207 F.3d 431, 435 (7th Cir. 2000).** Plaintiff has not demonstrated any error with regard to the credibility findings. As the ALJ's credibility findings were not "patently wrong," they should not be overturned. *Eichstadt v. Astrue*, **534 F.3d 663, 668 (7th Cir. 2008).**

### Recommendation

After careful consideration, this Court is convinced that the decision of the ALJ is supported by substantial evidence in the record as a whole, and that no errors of law were made. Therefore, this Court recommends that the final decision of the Commissioner of Social Security, finding that plaintiff Suzette M. Henson is not disabled, be **AFFIRMED.**

Objections to this Report and Recommendation must be filed on or before **July 5, 2011.**

**Submitted: June 15, 2011.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**